# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3724 | **DATE** | 1/28/2003 |
| **CASE TITLE** | Edward West vs. Ortho-McNeil Pharmaceutical Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☒ Status hearing set for 20 Feb. 03 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ☒ [Other docket entry]    ENTER MEMORANDUM OPINION AND ORDER: Ortho-McNeil Pharmaceutical Corporation's Motion for Summary Judgment is DENIED as to the race discrimination termination claim in Count I, GRANTED as to the sex discrimination claim and the race discrimination territory reassignments and bonus payments claims under Count I, and GRANTED as to Counts II and III..

(11) ☒ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

| WAP | courtroom deputy's initials | |

number of notices

JAN 29 2003

docketing deputy initials

date mailed notice

mailing deputy initials

U.S. DISTRICT COURT

03 JAN 29 PM 3:51

Date/time received in central Clerk's Office

**Document Number**

36

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

JAN 2 8 2003

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

EDWARD WEST,

        Plaintiff,

        v.

ORTHO-McNEIL PHARMACEUTICAL
CORPORATION,

        Defendant.

Case No. 01 C 3724

Hon. Harry D. Leinenweber

JAN 2 9 2003

### MEMORANDUM OPINION AND ORDER

Plaintiff Edward West ("West"), an African-American male born on September 5, 1938, filed a three-count complaint (the "Complaint") against Ortho-McNeil Pharmaceutical Corporation ("OMPC"), alleging that OMPC violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S.C. § 621 *et seq.*, when it terminated him on July 11, 2000. Before this Court is Defendant OMPC's Motion for Summary Judgment filed pursuant to FED. R. CIV. P. 56. For the following reasons, the Court grants the motion in part and denies the motion in part.

### BACKGROUND

In August 1997, Innovex, a company that provides pharmaceutical companies with contract sales representatives, hired Plaintiff Edward West ("West") and assigned him to OMPC. While working for Innovex, West was supervised by an employee from Innovex, and by Walter Pascale ("Pascale"), OMPC's District Manager for the Chicago South

36

District. When OMPC's contract with Innovex expired in January 1999, Pascale and other members of the OMPC management team hired West, along with ten other Innovex employees, onto its direct payroll as sales representatives.

West's initial sales territory covered Naperville, Wheaton, St. Charles, Geneva, Aurora, Batavia, and Carol Stream, Illinois. In early 1998, while still an employee of Innovex, West was reassigned to a territory that included Orland Park, Palos, Blue Island, and the south side of Chicago. In or around October 1998, when OMPC decided to hire the Innovex employees, OMPC conducted a full territory realignment, which resulted, in part, in the reassignment of West's territory to Oak Lawn, Evergreen Park, and the southwest side of Chicago.

Both as an Innovex employee and as an OMPC employee, West was eligible for bonuses in addition to his salary. In calculating sales representatives' bonuses, OMPC's Sales Incentive Compensation Department used prior sales data to extrapolate performance estimates for each particular territory. From these estimates, OMPC established an expected performance baseline, or "quota" for each territory, and compared that quota to the sales representative's actual sales performances to determine the final bonus. If a representative changed territories mid-year, OMPC calculated bonuses by following this procedure for each territory in which the sales representative worked, and by then prorating the resulting bonus amounts according to the amount of time the representative spent in

each territory. All bonuses were distributed in four installments throughout the year, with the initial three payments serving as "advances" based on performances to date. The final payment reconciled the advances with the year-end sales performance.

As a pharmaceutical company, OMPC is regulated extensively by the United States Food and Drug Administration (the "FDA"). Among other things, the FDA provides marketing standards for prescription drugs that companies such as OMPC must follow. OMPC, in turn, outlines some of these FDA rules and presents its own rules in a Sales Representative Policy Manual (the "Policy Manual") that it distributes to all sales representatives. Included in the Policy Manual is a bulletin titled "Unapproved Promotional Materials" that describes the FDA regulations on homemade marketing materials. (Taylor Aff., Ex. B.) This bulletin also includes a rule on "Homemade Sales Materials" that prohibits "the creation and use of unofficial sales materials." (*Id.*) This rule finishes with the warning that "SALES REPRESENTATIVES FOUND TO HAVE ISSUED THEIR OWN SALES MATERIALS OF ANY KIND WILL BE SUBJECT TO TERMINATION." (*Id.*) (emphasis in original). Another bulletin in the manual provides a rule on "Disparagement of Competition" that states, in part, that "[i]t is against company policy to disparage any competitor of Ortho-McNeil Pharmaceutical." (*Id.* at Ex. C.) On November 30, 1998, West signed a "Professional Sales Representatives Pledge of Ethics" and pledged, in part, that he would not "alter, create, and/or distribute 'home-made' (not supplied by OMP) materials to health care

- 3 -

professionals for any reason." (West Dep. Ex. 3.) Additionally, West received the Policy Manual in January 1999 when he was hired onto OMPC's direct payroll.

Prior to receiving the Policy Manual, and while still employed through Innovex, on or about August 13, 1998, West prepared and submitted a letter to a physician in his territory regarding one of OMPC's products. OMPC claims that when Pascale, West's supervisor, learned of this unauthorized mailing, he reviewed OMPC's policies prohibiting the distribution of "homemade" materials with West. In his deposition, West was unsure whether Pascale told him that the distribution was a violation or whether Pascale told him to run it by him before sending out such materials, but he formed the opinion that he needed to get management authorization before distributing such documents. On or around July 5, 2000, West again created and distributed a packet of materials to forty doctors and administrators at Holy Cross Hospital ("Holy Cross"), a customer in his territory. These materials included a cover letter written by West that disparaged a competitor's drug and that urged Holy Cross not to substitute that drug for OMPC's product. Among other things, West's letter asserted that the competitor product could inflict "instantaneous death" upon patients, and warned Holy Cross of the "huge punitive-damage award" that it could suffer if it replaced OMPC's product with the competing drug. West also included a petition supporting the retention of OMPC's drug on Holy Cross's formulary, numerous articles, including two *Wall Street Journal*

- 4 -

articles that discussed punitive damage awards, an FDA fax to OMPC's competitor on which West had noted that the FDA had fined the company for misrepresentation of its product, and a product insert for the competitor drug.

According to OMPC, Pascale learned about West's actions on July 7, 2000 and informed his immediate supervisor, Cathie Taylor, the Regional Business Director. Taylor in turn informed Timothy Gribbin, the acting Field Sales Director, of West's actions and, along with Pascale, contacted every Holy Cross recipient of West's materials to apologize for the distribution. On July 10, 2000, Taylor requested West's termination, which was authorized that day by Gribbin. Pascale relayed news of the termination to West on July 11, 2000.

West, on the other hand, claims that Pascale was not merely a messenger in OMPC's termination process, but an active participant. West further alleges that Pascale had approved the dissemination of the Holy Cross materials before turning around and informing Taylor of West's "violation." West portrays Pascale as an invidious decision maker who punctuated West's employment with race-based and age-based remarks. He contends that in addition to playing an integral role in West's termination, Pascale discriminated against West through territorial reassignments and the alleged impact those shifts had on his bonuses, and stymied West's promotional opportunities. On September 1, 2000, West filed a claim with the Equal Employment Opportunity Commission (the "EEOC") and with the Illinois Department of Human Rights alleging race, sex, and age

discrimination. The EEOC issued West a right-to-sue letter on February 27, 2001 and on May 21, 2001, West filed this suit.

**DISCUSSION**

***Summary Judgment***

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). In assessing the movant's claim, the court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmovant. *Miller v. Am. Family Mut. Ins. Co.,* 203 F.3d 997, 1003 (7th Cir. 2000). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations" contained in its pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.

1989).  It "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In the employment discrimination context, summary judgment is warranted where "the evidence, interpreted favorably to the plaintiff, could [not] persuade a reasonable jury that the employer had discriminated against the plaintiff."  *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570 (7th Cir. 1989).

## COUNT I - TITLE VII CLAIMS

Title VII makes it unlawful for an employer to terminate or otherwise to discriminate against an employee based on race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a).  In Count I, West charges that OMPC violated Title VII by discriminating against him based on his race and sex.

### *West's Sex Discrimination Claim*

While West alleges discrimination based on his sex in his Complaint, OMPC does not address this allegation in its summary judgment papers and West provides no evidence to support a sex-based discrimination claim in his response.  Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex,* 477 U.S. at 322.  In such a situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case

- 7 -

necessarily renders all other facts immaterial." *Id.* at 323. As a result, West's sex-based discrimination claim must fail.

### West's Racial Discrimination Claim

West also asserts that OMPC violated Title VII in three race-based ways: (1) by subjecting him to multiple territory reassignments; (2) by diminishing his bonus payments; and (3) by terminating him.

### Territory Reassignments

OMPC contends that West's allegations regarding territorial reassignments are time-barred and, therefore, cannot survive summary judgment. In Illinois, a plaintiff must file charges with the EEOC within three hundred days of the alleged discriminatory employment practice. 42 U.S.C. § 2000e-5(e)(1); *Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995). In this case, West filed his charge with the EEOC on September 1, 2000 and, therefore, may not recover for acts which occurred prior to November 5, 1999 (not November 3, 1999, as both parties mistakenly agree). West does not dispute that the first of two (not three, as asserted in his Complaint) reassignments took place in late 1997 or early 1998 and that the second took place in October 1998. (Def.'s 56.1 Stmt. ¶¶ 77, 80; Pl.'s 56.1 Stmt. ¶¶ 77, 80; West Dep. at 71.) West fails to provide any evidence to combat OMPC's statute of limitations argument, let alone the requisite evidence to survive summary judgment. *Celotex,* 477 U.S. at 322. OMPC's motion for summary

judgment with respect to the territory reassignments, therefore, is granted.

### *Bonus Payments*

In his Complaint, West alleges that "[i]n or around November 1999 I received a smaller bonus than I had earned under [OMPC's] sales goals." (Compl. at Ex. A.) As detailed *supra* in the background section, OMPC makes bonus payments to sales representatives in four installments throughout the year. It is unclear whether West's allegations include all four bonus payments in 1999, or merely his final, November 18, 1999 payment. Lacking any guidance from West in either his Complaint or his brief, this Court nevertheless assumes that West extends his claim to all four of the 1999 bonus payments.

While OMPC concedes that West received the final installment of his 1999 bonus within the statute of limitations, it relies upon its bonus payment procedure to argue that the three initial installments occurred outside the statute of limitations and must be dismissed as time-barred. In making this argument, OMPC presumes that each bonus payment is a distinct act that may not be pulled within the statute of limitations by the final payment. *See Nat'l R.R. Passenger Corp. v. Morgan*, 122 S.Ct. 2061, 2070-74 (2002)(explaining that discrete discriminatory acts are "not actionable if time barred, even when they are related to acts alleged in timely filed charges.") Whether or not this representation is accurate is a question of fact. As a result, it is West's obligation to provide contrary facts if he

wishes to contest dismissal of the pre-November 5, 1999 bonus payments. *See Celotex,* 477 U.S. at 322. West's response brief, however, entirely fails to address OMPC's statute of limitations arguments concerning these payments. Accordingly, West's discrimination claims for the first three bonus payments are time-barred.

In order to survive summary judgment on the remaining bonus payment, West must demonstrate that his allegedly reduced bonus was an "adverse employment action." *Hunt v. City of Markham*, 219 F.3d 649, 653 (7th Cir. 2000). It is well-established in this Circuit that "'loss of a bonus is not an adverse employment action in a case . . . where the employee is not automatically entitled to the bonus.'" *Miller*, 203 F.3d at 1006 (quoting *Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996)); *see also Hunt*, 219 F.3d at 654. In neglecting his bonus claim in his response, West establishes neither that he received a reduced bonus nor that he was automatically entitled to receive a bonus. A reasonable jury could not find that the bonus payment was discriminatory and, therefore, West's surviving bonus claim cannot survive OMPC's motion for summary judgment.

### Termination

A plaintiff may prove unlawful discrimination in an employment discrimination action through either direct evidence of improper motive or the indirect burden shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). West asserts

that he has both direct and indirect evidence of discrimination. Under either approach, the burden is on West, as the plaintiff, to show that genuine issues exist for trial. *Griffin v. City of Milwaukee*, 74 F.3d 824, 827 (7th Cir. 1996).

### Direct Evidence Prior to November 5, 1999

As direct evidence of discrimination, West points to eight race-based comments allegedly made by his superior, Pascale, throughout West's employment at OMPC. Seven of these comments were made prior to November 5, 1999 and OMPC correctly argues that these are time-barred. To circumvent this statute of limitations argument, West relies on the Supreme Court's recent *National Railroad Passenger Corp. v. Morgan* decision, in which the Court carved out an exception to the statute of limitations for hostile work environment claims where "all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 122 S.Ct. 2061, 2077 (2002). West suddenly asserts a hostile work environment claim in his response to OMPC's motion for summary judgment and contends that because Pascale made his last race-based comment on or about March 2, 2000, this Court may consider all eight of Pascale's alleged derogatory statements.

Yet neither West's discrimination charge nor his Complaint referred, directly or indirectly, to a hostile work environment, and West may not casually throw in such a claim at this stage in order to bring the time-barred comments within the protective cover of *Morgan*. "As a general rule, a Title VII plaintiff cannot bring claims in a

lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Recognizing that a discrimination charge is typically completed by a layperson, not a lawyer, courts are somewhat forgiving in the application of this rule. Regardless, a plaintiff may only bring claims "that are like or reasonably related to their EEOC charges and growing out of such charges." *Naylor v. Rockford Park Dist.*, No. 98-C-50315, 1999 WL 626762, at *2 (N.D. Ill. July 14, 1999). This rule has a dual purpose: (1) to give the EEOC and the employer the opportunity to settle the dispute, and (2) to provide the employer notice of the employee's claims. *Cheek*, 31 F.3d at 500.

Even under the broadest reading, there is no suggestion in West's discrimination charge or in his Complaint, which merely incorporates the discrimination charge by reference, that he is bringing a hostile work environment claim against OMPC. Under Title VII, an employee faces a hostile work environment when "the conduct at issue unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive working environment." *Naylor*, 1999 WL 626762, at *2. While Pascale's alleged comments may have created a hostile environment, West makes no mention of any of the comments in either his EEOC charge or in his Complaint. Indeed, West includes no descriptions whatsoever of his work environment. Instead, the allegations in West's EEOC charge, and by reference in his Complaint, relate to relocation, bonuses, promotions, and termination. As a result, neither document can be

- 12 -

read as sufficient to have put the EEOC or OMPC on notice that West was charging a hostile work environment. *See Naylor*, 1999 WL 626762, at \*2 (hostile work environment claim did not fall within the scope of discriminatory hiring and firing charges); *see also Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202-03 (7th Cir. 1996)(hostile work environment claim not within the scope of disparate treatment claims and theory waived because of omission from complaint); *Cheek*, 31 F.3d at 503 (hostile work environment claim cannot be inferred from charge of sex discrimination); *cf. Needy v. Vill. of Woodridge*, No. 96-C-5188, 1997 WL 461093, at \*3 (N.D. Ill. Aug. 8, 1997)(hostile work environment claim alleged in charge even though no allegations of wrongful sexual conduct because charge specifically mentions hostile work environment). The statute of limitations extension provided in *Morgan*, therefore, is inapplicable in this case, and seven of Pascale's alleged comments are time-barred.

### Direct Evidence After November 5, 1999

What remains available to West, therefore, is Pascale's March 2, 2000 comment, which occurred well within the statute of limitations. According to West, during a coaching session on or around that date, West presented Pascale with a revised routing list for doctors. Pascale rejected this list angrily and called West an "asinine nigger." While Pascale's comment, if true, was offensive and despicable, it is not direct evidence that West's termination was the result of intentional discrimination.

- 13 -

"Direct evidence is that which, 'if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption.'" *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 723 (7th Cir. 1998)(quoting *Hunt-Goliday v. Metro. Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1010 (7th Cir. 1997)).  As a result, to constitute direct proof of discrimination, isolated discriminatory statements must be made by the decision maker, *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 688 (7th Cir. 1998), or by "those who provide input into the decision." *Hunt*, 219 F.3d at 652. They must also be "contemporaneous with the discharge or causally related to the discharge decision making process." *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996).

While OMPC portrays Pascale as a detached messenger in West's termination, West asserts that Pascale played a more active role in OMPC's decision.  OMPC provides affidavits stating that Pascale was not the actual decision maker and that he had no authority to terminate West.  OMPC also provides both Taylor's termination request memorandum and the Employment Termination Request.  Neither of these documents includes Pascale's name.  West does not provide contrary evidence to establish that Pascale was the actual decision maker or that he had actual authority to terminate West.  West does, however, present sufficient evidence to establish that Pascale had "input" into the decision making process. *See Hunt*, 219 F.3d at 652.  West points primarily to OMPC's answers to one of West's interrogatories,

in which OMPC identified Pascale as one of the "individual(s) who decided and/or participated in and/or influenced the decision to terminate Plaintiff." (Pl.'s Resp. at 9.) OMPC explains that Pascale did indeed participate in the termination process by providing Taylor with information regarding West's Holy Cross distribution but that Pascale did not recommend or make the decision to discharge West. However, "an inference of discrimination may exist if the decision maker . . . relied on information supplied by someone with [racial] animus." *Aguilera v. Vill. of Hazel Crest*, No. 01-C-5913, 2002 WL 31841023, at *7 (N.D. Ill. Dec. 18, 2002). If this were not the case, an employee would have no recourse under Title VII if a non-decision making employee who had asserted the most malignant discriminatory motive provided decision makers with the fuel for termination or otherwise influenced decision makers. *See, e.g., Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 754 (7th Cir. 2000) ("[W]here the subordinate, by concealing relevant information from the decisionmaking employee or feeding false information to him, is able to influence the decision . . . the discriminatory motive of the other employee, not the autonomous judgment of the nondiscriminating decision-maker, is the real cause of the adverse employment action.")(quoting *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1400 (7th Cir. 1997) (internal citations omitted)).

West's direct evidence claim still fails, however, because Pascale's statement was neither contemporaneous with nor causally related to West's termination. While the Seventh Circuit has not

established a definitive window for contemporaneity, Pascale's alleged comment came over four months prior to West's termination and under the facts of this case, the two episodes cannot be viewed as temporally related. *See, e.g., Markel v. Bd. of Regents of the Univ. of Wisc. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002)(statements made two months prior to adverse action not contemporaneous); *Kennedy*, 140 F.3d at 724 (statement made five months prior to adverse action not temporally related); *but cf. Bellaver v. Quanex Corp.*, 200 F.3d 485, 493 (7th Cir. 2000)(evidence of discriminatory motive that occurred three or four months prior to termination could be viewed as sufficiently related). Indeed, West establishes no causal nexus between Pascale's comment and West's termination. Pascale's remark, if made, was a vile response that has no place in any work environment. However, it does not rise to the level of direct evidence of discrimination. "[B]igotry, per se, is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and an adverse employment action." *Gorence v. Eagle Food Ctrs.*, Inc., 242 F.3d 759, 762 (7th Cir. 2001)(providing as an example of direct evidence the statement "I fired Judy because she was an old woman.") In this case, Pascale's comment was made in response to West's suggested routing list, an event unrelated to West's eventual termination. West has not alleged that any OMPC employee arguably involved in his termination, including Pascale, made any discriminatory comments at the time of his termination. As a result, West has failed to

establish the necessary nexus between Pascale's comment and his own termination and has failed to adduce direct evidence of discriminatory termination. West may, of course, still rely on Pascale's alleged comment to prove pretext under the *McDonnell Douglas* approach.

### *Indirect Evidence*

To succeed under the *McDonnell Douglas* burden-shifting approach, West must first establish a *prima facie* case of discrimination by demonstrating that: (1) he was a member of a protected class; (2) he performed his job according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees outside of his protected class. *See, e.g., Markel*, 276 F.3d at 911; *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885-86 (7th Cir. 2001). West need not present overwhelming evidence on the *prima facie* case; he merely needs to show that "there is some evidence from which one can infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion." *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 793 (7th Cir. 1997). If West meets this low burden and establishes a *prima facie* case, a presumption of discrimination arises, and OMPC must produce evidence of a legitimate, nondiscriminatory reason for West's termination. *Gordon*, 246 F.3d at 886. If OMPC is successful, the obligation shifts to West to show that OMPC's proffered reason for termination

was pretextual. *Id.* West need not provide direct evidence of discrimination, but must merely meet his respective burdens. *Id.*

OMPC does not contest that West, who is African-American, is a member of a protected class or that West suffered an adverse employment action when he was terminated. The parties disagree on the second and fourth prongs of the *McDonnell Douglas* analysis, namely, whether West performed his job according to OMPC's legitimate expectations and whether OMPC treated similarly situated employees outside of West's protected class more favorably.

Under the second prong of *McDonnell Douglas*, West must demonstrate that "he was performing his job satisfactorily enough to avoid discharge absent racial bias." *Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 445 (7th Cir. 1997). Until his termination, West appears to have performed successfully and satisfactorily for OMPC. In August 1998, while employed by Innovex, West violated OMPC policy by distributing an unauthorized letter to a client, but did so prior to receiving OMPC's Policy Manual. West, however, admits that even after discussing this violation with Pascale, on or around July 5, 2000 he again created and distributed a large package of disparaging materials to forty individuals at Holy Cross Hospital, one of OMPC's clients. In the Policy Manual, OMPC clearly establishes such a distribution as an extremely serious violation of several company policies. Although he contends that OMPC did not cover these policies in training sessions, West acknowledges receiving the Policy

Manual and has to concede that he signed a pledge not to create or dispense such materials unless they were supplied by OMPC.

Both parties agree that after West's August 1998 violation of OMPC policy, Pascale counseled West regarding OMPC's policies and told West that he needed to obtain authorization before sending out such materials. According to West, on July 4, 2000, the day before he distributed the materials, he obtained that very authorization from Pascale. West claims that he read the cover letter to Pascale over the telephone and that Pascale told West that the letter "sounded fair." West further claims that Pascale made no changes to the document. If true, Pascale's approval of the materials could be extremely troubling, as Pascale is simultaneously the one with the alleged discriminatory animus, and the one who initiated the termination process. Pascale denies that he ever approved the distribution or that he knew about it until after it had taken place, but for the purposes of this motion, we must assume that West's allegations are accurate.

OMPC argues that even if Pascale approved the Holy Cross distribution, Pascale's actions would only be relevant if he had played a decision making role in West's termination. OMPC cites to *Owens v. Top Transportation Services, Inc.*, a case in which the plaintiff also argued that his supervisor had authorized his violations, for the proposition that, as a non-decision maker, Pascale's authorization was irrelevant. 168 F. Supp. 2d 866 (N.D. Ill. 2001). The *Owens* court, however, found that what the supervisor

knew was irrelevant, not because he was not the decision maker, but rather because he "did not participate in the circumstances surrounding [plaintiff's] discharge." *Id.* at 870. Furthermore, the court explained that the plaintiff had shown "no link" between the decision makers and the supervisor. *Id.*

West, on the other hand, has adduced sufficient evidence connecting Pascale to the termination process. Pascale informed Taylor of West's violation by faxing her the cover letter, investigated the extent of the violation along with Taylor, and communicated the termination decision to West. *See Aguilera*, 2002 WL 31841023, at *7 ("an inference of discrimination may exist if the decision maker . . . relied on information supplied by someone with [racial] animus"). Moreover, in passing the offending materials onto Taylor, Pascale presumably did not tell her that he had authorized them. As the *Owens* court recognized, *Owens*, 168 F. Supp. 2d at 870, the Seventh Circuit has held that where an employee influences a decision maker "by concealing relevant information," that employee's prejudices are imputed to the "employee who has formal authority over the plaintiff's job." *Maarouf*, 210 F.3d at 754 (quoting *Wallace*, 103 F.3d at 1400). This is perhaps especially true in this case, where Taylor relied so heavily on Pascale as an intermediary and where she terminated West without speaking to him directly about the offense. *See Curry v. Menard, Inc.*, 270 F.3d 473, 481 (7th Cir. 2001)(Rovner, J., concurring).

Due to Pascale's approval, West has established a genuine issue of fact as to whether he was meeting the legitimate expectations of his employer. Indeed, the Seventh Circuit has held that when those judging the plaintiff's performance are the same as those accused of discriminating against that plaintiff, the legitimate expectations prong of the burden shifting test is an unnecessary part of the analysis. *See Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 n.3 (7th Cir. 2001). As a result, West need not show that he was meeting OMPC's legitimate expectations in order to satisfy his *prima facie* case.

The fourth prong of *McDonnell Douglas* requires West to show that in being discharged, he was treated differently than similarly situated employees who are not African-American. A "similarly situated" employee is someone "directly comparable" in "all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). The relevant factors depend upon the facts of the case. *Id.* In this case, West would have to point to a non-African-American employee, who is on his level and under Pascale's supervision, who violated the same policies at OMPC, who also did so with Pascale's approval, but who was not terminated by Taylor. Neither OMPC (who does not have the burden to do so) nor West present evidence of such an employee. West argues that Pascale was an employee, outside the protected class, who also violated the OMPC polices and who was not terminated. As West's supervisor, however, Pascale cannot be described as similarly situated for the purposes of this prong. *Id.*

Yet this Court must draw all inferences in the light most favorable to West and accept that Pascale did set West up by approving the distribution of disallowed materials and then informing Taylor of the violation. Given that scenario, it runs counter to Title VII goals to prevent West from progressing in his claim simply because Pascale would have no reason to authorize another employee to violate OMPC policy and to inform Taylor of that violation. Moreover, Taylor, who had evidenced no racial animus of her own towards West, would have no reason *not* to terminate any such employee.

The Seventh Circuit has noted that the "'*McDonnell Douglas* test was never meant to be applied rigidly, ," *Leffel*, 113 F.3d at 793 (quoting *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 n.4 (7th Cir. 1995)), and that while "[e]vidence of disparate treatment is certainly one of the most obvious ways to raise an inference of discrimination absent direct proof of discriminatory animus. . . . [i]t should not be understood as the only means of doing so." *Id*. at 794; *see also Gordon*, 246 F.3d at 893 (Easterbrook, J., dissenting)(decrying the *McDonnell Douglas* analysis as "so encrusted with the barnacles of multi-factor tests and inquiries that it misdirects attention" and cautioning courts to remember that the underlying inquiry is simple: "Could a reasonable trier of fact conclude that [the plaintiff] is the victim of . . . discrimination?"). Indeed, in several single discharge cases such as this, the Seventh Circuit has replaced the "similarly situated"

inquiry with an inquiry into whether the "employer sought a replacement for [the plaintiff]." *See, e.g.*, *Flores v. Preferred Tech. Group*, 182 F.3d 512, 515 (7th Cir. 1999)(discriminatory discharge based on national origin); *Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1123 (7th Cir. 1998)(discriminatory discharge based on age); *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993)(discriminatory discharge based on national origin). Under this inquiry, which appears more appropriate than the "similarly situated" inquiry given the facts of West's termination, West must establish that OMPC replaced him, thereby demonstrating that he was not fired because of a reduction in force or some other legitimate business reason. West was indeed replaced by Marnelle Wong shortly after his termination. There is some dispute over whether Wong is Asian or Caucasian (Pl.'s Resp. at 10; Def. Interrog. Resp. No. 7), however, that is irrelevant as West need not show that he was replaced by a person outside his protected class. *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158 (7th Cir. 1996)(per curiam).

West has established a genuine issue of triable fact on all four prongs and, therefore, has established a *prima facie* case of discrimination. Assuming that OMPC has offered an arguably nondiscriminatory reason for West's dismissal, West must demonstrate that OMPC's reason is a pretext for discrimination. West may make this showing by "providing 'evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient

to motivate the discharge.'" *Gordon*, 247 F.3d at 888-89 (quoting *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 395 (7th Cir. 1998)). West must do more than show that OMPC's decision was "'mistaken, ill considered or foolish, [and] so long as [the employer] honestly believed those reasons, pretext has not been shown.'" *Nawrot v. CPC Int'l*, 277 F.3d 896, 906 (7th Cir. 2002)(quoting *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)). Courts, however, "need not abandon good reason and common sense in assessing an employer's actions." *Gordon*, 246 F.3d at 889.

As is frequently the case, there is significant overlap between the issue of West's satisfactory job performance and the question of whether OMPC's proffered justification may be considered pretextual. OMPC explains that it terminated West because he violated company policy by distributing "homemade, unapproved promotional materials" to Holy Cross personnel. (Def.'s Br. at 5.) But as discussed above, West claims that, for racially discriminatory reasons, Pascale approved the promotional materials in order to get West fired. It is irrelevant that neither Taylor nor Gribbin participated in the alleged set up, or that they had no knowledge of Pascale's actions. An employer cannot claim that a termination was an honest mistake when they were intentionally mislead into taking such an action by an employee such as Pascale.

In *Sarate v. Loop Transfer, Inc.*, No. 95-C-5671, 1997 WL 543068 (N.D. Ill. Aug. 28, 1997), the plaintiff alleged that he was terminated because he had been framed. The highest-ranking

participant in the alleged frame, a man named Edinger, did not participate in the investigation of the supposed violation or in the termination decision and there was no evidence that any of the decision makers knew of the set-up. *Id.* at *4. The court found that by providing the decision makers with false information, however, Edinger had "poisoned the well" and that as a result the defendant's proffered reason for termination was pretextual. *Id.* Due to Pascale's alleged actions, OMPC's termination decision was similarly tainted at its core, and, therefore, West has demonstrated that OMPC's reason for terminating him was pretextual. OMPC's motion for summary judgment on the termination charge in Count I is denied.

## COUNTS II AND III - ADEA CLAIMS

Count II of West's Complaint alleges violation of the ADEA, while Count III alleges a willful violation of the ADEA. West appears to allege age discrimination with respect to his territory reassignments and bonuses, however, as discussed above, his reassignment claims and all but one of his bonus claims are procedurally barred. The final bonus claim fails as it is not an adverse employment action as required under both Title VII and the ADEA. West also appears to allege age discrimination with respect to his termination and a failure to promote claim. He has failed to provide sufficient evidence of age discrimination to survive summary judgment, and therefore, the Court grants OMPC's motion with respect to Counts II and III.

### Termination

West's response to OMPC's motion is completely void of any evidence that OMPC terminated West for age-related reasons. Indeed, despite faulting OMPC for "blithely" asserting that the record contains no relevant age-based comments, West goes on essentially to ignore his ADEA claims, and provides no specific information to support them.  Buried within West's 56.1 is the single allegation that, in April 1999, Pascale told West that he was "too old" to advance within OMPC.   (Pl.'s 56.1 Resp. ¶ 105; Pl.'s 56.1 Stmt. ¶ 19).   Not only is this statement time-barred, however, as it occurred well before November 5, 1999, it is also unrelated to the termination both temporally and causally. *Geier*, 99 F.3d at 242.  As a result, West has no direct evidence that he was impermissibly terminated due to his age.   This lack of evidence also fatally hampers his *prima facie* case and his pretextual argument as there is no evidence that Pascale's role in West's termination was motivated by age-related animus.

### Failure to Promote

In his discrimination charge, West claims that he was not promoted to the position of Hospital Representative in either February 2000 or June 2000.  This claim barely merits discussion, as West entirely ignores it in his response to OMPC's motion for summary judgment.   Indeed, West appears to have no factual basis for his allegations.   It is undisputed that OMPC had no vacant Hospital Representative positions available in West's region in June 2000.

West also does not dispute that the February 2000 position, while in Taylor's district, was not in Pascale's district and adduces no evidence whatsoever that he was somehow passed over for this promotion based on age-related discrimination. West fails to provide evidence sufficient to meet his summary judgment burden, *see Celotex*, 477 U.S. at 322, and as a result, OMPC's motion for summary judgment on Counts II and III is granted.

## CONCLUSION

For the reasons set forth above, OMPC's Motion for Summary Judgment is **DENIED** as to the race discrimination termination claim in Count I, **GRANTED** as to the sex discrimination claim and the race discrimination territory reassignments and bonus payments claims under Count I, and **GRANTED** as to Counts II and III.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: January 28, 2003